IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MARY S. FRANKLIN, Administrator of the Estate of Walker M. Franklin, deceased,<br><br>*Plaintiff,*<br><br>v.<br><br><br>K-MART CORPORATION,<br><br>*Defendant.* | CASE NO. 6:13-cv-00021<br><br><br>**MEMORANDUM OPINION AND ORDER**<br><br><br><br>JUDGE NORMAN K. MOON |

This matter comes before the Court on Mary S. Franklin's motion for partial summary judgment ("Motion" or "Motion for Summary Judgment") (docket no. 24). Plaintiff Mary S. Franklin ("Plaintiff") filed her complaint in this pharmacy malpractice case in this Court on March 7, 2013. Defendant K-Mart Corporation ("Defendant" or "K-Mart") timely answered, and discovery has proceeded. On November 18, 2013, Plaintiff the Motion for Summary Judgment and Defendant timely responded with objections ("Response") (docket no. 27). Plaintiff claims she is entitled to summary judgment on the issues of Defendant's standard of care and its breach of that standard of care, but seeks to leave the issues of causation and damages to be determined later. Defendant disputes that Plaintiff has established a standard of care and breach, and asks this Court to instead establish an undisputed fact.

I. FACTUAL BACKGROUND[1]

Defendant operates a pharmacy in the Wards Road K-Mart, in Lynchburg, Virginia. Plaintiff alleges that on March 11, 2011, Mr. Walker Franklin attempted to pick up a prescription

---

[1] Unless otherwise noted, the facts herein are undisputed.

1

for Prednisone, a steroid, at the pharmacy.[2] Instead of Prednisone, Defendant sold him a prescription for Altace (Ramipril), a blood pressure medication that was intended for William Franklin. The parties do not agree on how this occurred.

Plaintiff alleges that the prescription had been called in and filled (the medication had been placed in a bottle, the bottle placed in a bag, and the bag placed in a bin to await pickup) when Franklin arrived. According to records, Sharlay Jaudon, a K-Mart employee and pharmacy technician, sold Franklin the prescription. Part of her job was to ring up customers who came to pick up their prescriptions. This involved identifying the customers, providing them with the medications they ordered, getting them to sign for the medication, and accepting payment.

K-Mart's policy at the time was to match customers to their prescriptions by having the pharmacy technicians ask for two pieces of identifying information: the customer's name and the customer's address. Guill Dep. 24, 71, 74. Lamartina Dep. 28. Lineberry Dep. 15–17.[3] Plaintiff alleges Jaudon could not have checked Franklin's name and address against the prescription she gave him on March 11, 2011, because he received medication with William Franklin's name and address indicated on at least the bag, and possibly the medication bottle as well. Jaudon testified that she knew Walker Franklin by sight, as a regular of the K-Mart Pharmacy, and would recognize him if he came to the window for a prescription. Jaudon Dep. 11–13. In fact, she knew his first and last name, and when he came up to the counter, she would

---

[2] Although the answer only admits that a prescription was given to either Mr. Franklin or his agent on or about March 10, *see* Compl. ¶¶ 10–11; Answer ¶¶ 10–11, the parties clarified that this fact is undisputed at the hearing.

[3] Larry W. Guill is the Pharmacist-in-Charge, or general manager, at K-Mart's pharmacy ("K-Mart Pharmacy"). He is the manager for that pharmacy at all times, though he is not always present when it is open. Guill Dep. 13–16. Thomas P. Lamartina is a pharmacist for the Wards Road K-Mart Pharmacy. He was on duty, and therefore in charge of the pharmacy, when Franklin's daughter called to say he had received the wrong prescription. This was either the day of or the day after the incident, though he cannot recall. He prepared an incident report of the investigation the evening he received the call. Lamartina Dep. 12–13, 21. He may or may not have been on duty the day Franklin received his medication from the pharmacy. *Id.* at 21. Daniel R. Lineberry, II, is K-Mart's Pharmacy District Manager. Lineberry Dep. 7.

not even need to ask him his name. *Id.* at 22. Jaudon does not remember specifics about March 11, 2011, the day Franklin allegedly came to the pharmacy for his prescription. She says she did not realize on March 11 that she sold him the wrong medication, but knows that now. *Id.* at 13.

Plaintiff alleges that on or about March 11 and 12, Walker Franklin took one dose of the Altace per day, thinking it was Prednisone. Compl. ¶¶ 12–13. He continued to take his normal hypertensive medication in addition to the Altace. On or about March 12, 2011, Plaintiff alleges Mr. Franklin's dialysis treatment was terminated because his blood pressure was too low. Later that day, he went to the emergency department at Lynchburg General Hospital and was released when abdominal films revealed "minimal ileus."[4] Compl. ¶¶ 14–15. On or about March 13, 2011, Plaintiff was transported in an ambulance to Lynchburg General Hospital, complaining of severe abdominal pain. An abdominal CT scan showed considerable small bowel distention, according to Plaintiff, and Mr. Franklin was taken to the operating room for emergency surgery. Mr. Franklin survived the operation but remained in the hospital and died on March 25, 2011, his death certificate listing "ischemic bowel"[5] as his cause of death. Compl. ¶¶ 17–18.

Plaintiff submits a declaration by David Davison, RPh, discussing the standard of care for a pharmacy in Virginia. David Davidson has been a licensed pharmacist practicing in Virginia for 23 years, and currently practices as the sole owner of Davidson's Pharmacy in Christiansburg, Virginia. He testifies that based on his "specialized knowledge, education,

---

[4] Although not necessary to decide this Motion, I can take judicial notice of the definition of "ileus" from Merriam-Webster's Medical Dictionary. Merriam-Webster's Medical Dictionary defines "ileus" as: "obstruction of the bowel; *specifically* **:** a condition that is commonly marked by a painful distended abdomen, vomiting of dark or fecal matter, toxemia, and dehydration and that results when the intestinal contents back up because peristalsis fails although the lumen is not occluded." Peristalsis is defined as: "successive waves of involuntary contraction passing along the walls of a hollow muscular structure (as the esophagus or intestine) and forcing the contents onward." Merriam-Webster Medical Dictionary Online, http://www2.merriam-webster.com/cgi-bin/mwmedsamp.

[5] "Ischemia" is defined as a "deficient supply of blood to a body part (as the heart or brain) that is due to obstruction of the inflow of arterial blood (as by the narrowing of arteries by spasm or disease)." Merriam-Webster Medical Dictionary Online, http://www2.merriam-webster.com/cgi-bin/mwmedsamp. Once again, this definition may be judicially noticed but is not necessary to decide this Motion.

training, and experience [as the sole owner of Davidson's pharmacy for 13 years], [he is] qualified to offer expert opinions as to the standard of care required of a pharmacist and/or pharmacy." Davidson Decl. ¶ 1. Under penalty of perjury, after being duly sworn, Davidson opines that:

> It is a deviation from the acceptable standard of care applicable to a pharmacy for that pharmacy, through its employees, to give medication intended for one patient, and labeled with that patient's name, to a different patient. *A pharmacy, through its employees, is required by the standard of care to verify that the correct medication is given to a patient.* This can be done in a number of ways, such as by comparing unique identifying information such as the patient's name coupled with his or her birthdate, address, or other unique identifying data.
>
> When a pharmacy, through its employees, fails to use unique identifying data to make sure that the medication it is providing to a patient is, in fact, the medication intended for that patient, and instead provides that patient with medication intended for and labeled with the name of a different patient, that pharmacy deviates from the standard of care and breaches its duty to the patient to whom it provides the incorrect medication.

Davidson Decl. ¶¶ 2–3 (emphasis added).[6]

Defendant's expert disclosures, attached to Plaintiff's motion, do not contain any expert testimony on the standard of care for a pharmacist or whether Defendant breached the standard. Instead, these disclosures address causation and damages. Likewise, Defendant attaches no factual testimony regarding how Franklin received the wrong medication from the pharmacy.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment (or partial summary judgment) "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to

---

[6] Plaintiff also deposed pharmacists who managed the K-Mart Pharmacy about the standard of care for pharmacists. Plaintiff alleges they have all testified that the standard of care requires the pharmacy to take steps to ensure it dispenses the right medication to the right patient. However, it appears that Plaintiff failed to lay the proper foundation to admit most of these opinions as expert opinions on the standard of care for a pharmacist practicing in Virginia. I need not decide whether these opinions are admissible at this stage, because Davidson's declaration provides sufficient admissible evidence on the standard of care for a pharmacist practicing in Virginia.

4

materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be " 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. *See also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

### III. DISCUSSION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. It is undisputed that Plaintiff is a citizen and resident of Virginia. She is the Administrator of the Estate of Walker M. Franklin, the deceased, who also was a citizen of, resided in, and was domiciled in Virginia. Defendant K-Mart Corporation is incorporated under the laws of Michigan, and states that its principal place of business is in Illinois. Therefore, complete diversity of citizenship exists between all the parties. The amount in controversy, $2,000,000, exceeds $75,000 as required. This Court also has personal jurisdiction over the parties and venue is proper in this Court. K-Mart has received proper service of process through its registered agent in Virginia and the events in question occurred at the K-Mart Pharmacy in the city of Lynchburg, Virginia.

Federal courts sitting in diversity apply state substantive law to state claims. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Therefore, Virginia law applies to Plaintiff's claims. In Virginia, tort actions alleging negligence from acts or omissions occurring during professional services rendered by health care providers are classified as medical malpractice or "medical negligence" actions. *See* Va. Code § 8.01-581.1; *Coston v. Bio-Med. Applications of Virginia, Inc.*, 654 S.E.2d 560, 562 (Va. 2008). A pharmacist is a health care provider; thus, this case falls under Virginia's medical malpractice framework. *Id.* ("'Health care provider' means (i) a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services[, including] as a . . . pharmacist . . . .").

To prove a medical negligence claim in Virginia, a plaintiff must establish the applicable standard of care, the defendant's breach of that standard, and damages sustained by plaintiff from injuries proximately caused by the defendant's breach. Virginia statutes define the standard of care by which practitioners must be judged in medical malpractice suits:

> [I]n any action against a . . . health care provider to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in this Commonwealth, the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth.

Va. Code § 8.01-581.20.

To establish the standard of care and breach of that standard, parties must usually present expert testimony. *Coston*, 654 S.E.2d at 562. However, in certain circumstances "expert testimony is not necessary in a medical negligence case because the alleged acts of negligence clearly lie within the range of the jury's common knowledge and experience." *Id.* at 562–63 (counting cases). A party may present expert testimony by a witness qualified to testify as an expert on the standard of care. Such a witness must:

6

> [D]emonstrate[] expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Va. Code § 8.01-581.20.

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment, arguing she has established that Defendant breached the applicable standard of care. As David Davidson testified, Plaintiff argues that "[a] pharmacy, through its employees, is required by the standard of care to verify that the correct medication is given to a patient." Davidson Decl. ¶ 2. Or alternatively: "It is a deviation from the acceptable standard of care applicable to a pharmacy for that pharmacy, through its employees, to give medication intended for one patient, and labeled with that patient's name, to a different patient," especially if it "fails to use identifying data" to ensure it dispenses the proper medication to each patient. *Id.* at ¶¶ 2–3.

Plaintiff claims Jaudon's deposition testimony and the lack of any contradictory expert or lay opinion establish that Defendant undisputedly breached the standard of care in giving Franklin the wrong medication. Plaintiff emphasizes that Defendant has presented no sworn testimony or argument "as to how a pharmacy could give a patient the wrong medication without breaching its duty."[7] Pl.'s Mot. for Summary Judgment 5. Plaintiff argues it would save the Court and parties significant time and resources to avoid discovery and proof on these issues at trial when no genuine dispute of any material fact exists to place their resolution in doubt.

Defendant does not dispute that Franklin received medication labeled and intended for another patient. Indeed, Defendant urges this Court to establish an undisputed fact that "Mr.

---

[7] Plaintiff also reads between the lines of Jaudon's deposition testimony to argue Jaudon likely did not properly check Franklin's identifying information and therefore gave him someone else's medication. Defendant has challenged the admissibility of some of these statements, and I need not rely on them for this Motion.

7

Walker Franklin was sold medication belonging to another individual, bearing the name of that other individual on the bottle and bag containing said medication." Def.'s Resp. 4. Defendant disputes that Plaintiff has established either a standard of care or breach. Since Jaudon:

> [C]annot recall the transaction at issue here, and all that can be established is that the wrong medication was given to Mr. Franklin[,] . . . [t]he facts and circumstances leading up to that event have not been established and are still the subject of a jury's deliberation.

*Id.* at 5. Defendant offers no explanation and pleads no contributory negligence, assumption of risk, or other defense. Although the pharmacy admittedly sold Franklin the wrong prescription, Defendant urges that it is not undisputed that it breached the applicable standard of care. Therefore, Defendant requests this Court deny Plaintiff's motion for partial summary judgment and instead establish the undisputed fact"quoted above.

## B. Applicable Standard of Care

Under Virginia law, Plaintiff has submitted sufficient evidence to establish a standard of care for pharmacists in this situation. The alleged negligence may lie within a jury's common knowledge and experience, such that expert testimony is not even necessary. *See generally Nichols v. Kaiser Found. Health Plan of Mid-Atl. States, Inc*., 514 S.E.2d 608, 609 (1999) (noting the trial court below had found "expert testimony was unnecessary because a jury could understand, without the aid of such testimony, that dispensing wrong medication is a breach of a pharmacist's standard of care"). I need not decide this issue, however, because Plaintiff has submitted admissible expert testimony on the standard of care.

Plaintiff's expert David Davison, RPh, is qualified to testify about the standard of care and has established that standard. Under Virginia Code § 8.01-581.20, a proposed expert must demonstrate "expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards." Va. Code § 8.01-581.20. Preferably, the

person is also licensed to practice the specialty in Virginia, and the person must have practiced the specialty within one year of the incidents in question. *Id.* Davidson fulfills these requirements. Davidson has practiced as a sole owner and operator of a pharmacy for 13 years and as a licensed and registered pharmacist for 23 years. He has testified sufficiently about his knowledge of the standard of care, and has testified about that standard. *See Jackson v. Qureshi*, 671 S.E.2d 163, 166–68 (Va. 20009) (discussing proper establishment of knowledge and licensing requirements under Va. Code § 8.01-581.20 in trial judge's sound discretion).[8]

Defendant has presented no conflicting testimony, expert opinion, or factual information that might put the facts necessary to establish a standard of care in material dispute. Defendant argued in the hearing that Plaintiff has not established a proper standard of care, because Davidson reasons backward from the occurrence of Plaintiff getting the wrong medication, an accident, to find a standard of care and conclude Defendant was negligent. Defendant finds this akin to "an opinion that a standard of care for a truck driver is not to have a collision." Resp. 4. Instead, Defendant argues, Davidson should establish what steps Defendant must have followed to practice with reasonable skill and diligence as a pharmacist in these circumstances.

---

[8] At least one of Defendant's pharmacists has testified the standard of care encompasses getting the right medication to the right patient. *See* Guill Dep. 107:13. Although Defendant objects that Plaintiff did not lay the proper foundation, Guill has been a licensed, practicing pharmacist in Virginia since 1972, and currently practices as the pharmacist-in-charge at K-Mart Pharmacy. *Id.* at 11, 13. Guill testified extensively about K-Mart's policies, and also likely testified sufficiently about his knowledge and the standard of care to demonstrate "expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards." Va. Code § 8.01-581.20. *See cf. Walter v. Wal-Mart Stores, Inc.*, 748 A.2d 961, 967–68 (Me. 2000) (based on pharmacist's own testimony, court found standard of care breached when that pharmacist filled prescription with wrong drug, dispensed it to patient, and failed to discover after neglecting two checks that would have uncovered the error). However, I need not and do not consider Guill's testimony on this motion, because Davidson's testimony sufficiently establishes the standard of care. I also do not consider the testimony of Thomas P. Lamartina or Daniel R. Lineberry, II, two other pharmacists involved with the K-Mart Pharmacy. As Defendant asserts, Plaintiff mostly asked these two about K-Mart's policies and procedures, which do not necessarily equate to the standard of care. *See Virginia Ry. & Power Co. v. Godsey*, 83 S.E. 1072, 1073 (1915) (finding evidence of defendant company's rules inadmissible to prove the standard of care); *Pullen v. Nickens*, 310 S.E.2d 452, 456–57 (Va. 1983) (same). Plaintiff also failed to establish that Lamartina is licensed to practice in Virginia, or that Lineberry has been active in a clinical pharmacy practice within a year of the incident in question.

In fact, Plaintiff has provided the specific testimony Defendant seeks. A pharmacy must somehow verify it delivers the right medication to the right patient, and can use unique identifying information to do so. Defendant's arguments are unavailing, especially since Defendant does not point out any facts material to the standard that are genuinely disputed. Plaintiff has met her burden to establish a standard of care for pharmacists in this situation. In its simplest form, "[a] pharmacy, through its employees, is required by the standard of care to verify that the correct medication is given to a patient." Davidson Decl. ¶ 2. Or in more detail: "It is a deviation from the acceptable standard of care applicable to a pharmacy for that pharmacy, through its employees, to give medication intended for one patient, and labeled with that patient's name, to a different patient," especially if it "fails to use identifying data" to ensure it dispenses the proper medication to each patient. *Id.* at ¶¶ 2–3.

### C. Breach of the Standard of Care

Although Defendant has presented no factual or expert testimony to contest Plaintiff's motion,[9] it need not do so. The burden remains with Plaintiff to prove her case. But in this context, she is entitled to summary judgment if she can show there is no genuine dispute of any fact material to whether Defendant breached the applicable standard of care.

The question of breach is one for the jury if, given Plaintiff's admissible evidence, reasonable minds could disagree about whether Defendant breached the applicable standard of care. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) ("[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute over a

---

[9] Defendant notes Guill, the pharmacist-in-charge, testified that he believes Jaudon met the standard of care on the day in question. However, insufficient foundation exists to make this statement admissible. Resp. 3; Guill Dep. 108:13. Defendant objects that Guill cannot establish a standard of care. And though Guill testifies about the standard of care and general procedures, he does not testify in the deposition testimony before this Court about any knowledge he has of how the events on the day in question occurred, nor about whether he observed those events.

material fact exists and precludes summary judgment); *cf. Jenkins v. Payne*, 465 S.E.2d 795, 799 (Va. 1996) ("Issues of negligence and proximate causation ordinarily are questions of fact for the jury's determination. A court decides these issues only when reasonable persons could not differ.") (internal citations omitted).

### 1. Plaintiff's Evidence

As part of her evidence, Plaintiff presents testimony from Sharlay Jaudon, the pharmacy technician who dispensed Mr. Franklin the wrong prescription. Jaudon's deposition testimony creates a strong string of inferences explaining how Defendant might have breached the standard of care. Jaudon was on duty, she sold the prescription to Franklin, she normally did not check more than a patient's name before dispensing medication, she knew Franklin by sight (including his first and last name), and she thinks she obviously gave Franklin the wrong prescription bag.[10] Franklin did, in fact, get medication intended and labeled for William Franklin. However, Defendant objected to some of this testimony during Jaudon's deposition. I do not rely on any potentially inadmissible testimony from Jaudon to find Plaintiff has established that Defendant breached the applicable standard of care. That finding is well supported by the undisputed fact that Defendant dispensed Mr. Franklin medication labeled and intended for another patient.

### 2. Discussion

Virginia case law does not conclusively cover these circumstances. But in the instant case, Plaintiff's evidence shows that Defendant provided the wrong prescription to Walker

---

[10] Jaudon testified that her normal practice was to ask for a customer's name, and only to check it against a second identifier, such as an address, if the bin contained prescriptions for two patients with the same name. Jaudon Dep. 11–12. It does not appear Defendant objected to this testimony and it is difficult to tell whether it would be admissible as Jaudon's routine habit or practice as a pharmacy technician. *See* Fed. R. Ev. 406. Jaudon also testified that she does not remember specifics about the day Franklin picked up his prescription. When asked about how she thinks Franklin got the wrong medication from her, she said: "I mean, I obviously picked the wrong bag." Jaudon Dep. 21. Defendant objected to this statement as inadmissible speculation. Jaudon's statement might be admissible as a proper lay opinion – she might have concluded she must have given Franklin the wrong bag based on the knowledge and experience she has gained from working as a technician whose job is to dispense prescriptions in this setting. *See* Fed. R. Ev. 602. Regardless, I need not and do not rely on either of these statements.

Franklin, in breach of its duty to provide the correct prescription. While Defendant does not carry the burden, it provides no evidence that places any fact material to this breach in genuine dispute. On the evidence before me, no reasonable jury could return a verdict that Defendant, the nonmoving party, did not breach the applicable standard of care. Therefore, I will grant Plaintiff's motion for partial summary judgment.

Plaintiff's evidence leads to the conclusion that in dispensing Walker Franklin medication labeled and intended for another patient, K-Mart Pharmacy breached the applicable standard of care. Defendant admits this occurred, but argues that as with a vehicle collision, the mere occurrence of an accident cannot indicate breach. Defendant's argument proves partly inapposite, and partially aids Plaintiff. When a vehicle collision occurs, multiple intervening factors may mean the driver was not negligent. Perhaps the driver acted with reasonable care in swerving to avoid a deer or child in the road and unavoidably caused a collision. Yet, when pressed at the hearing to provide any material fact implicating such an intervening factor or alternate explanation here, Defendant admitted it has none. Instead, Defendant argues Plaintiff must provide that explanation to prove no genuine dispute of material facts exists regarding Defendant's breach.

I disagree. In some scenarios, a plaintiff need not prove exactly how a defendant erred in causing an accident to show the actor involved breached a duty of reasonable care. Even in the vehicular accident context, Defendant ignores that "[w]hen a situation is open and obvious, one will not be heard to say that he looked but did not see." *Russell v. Kelly*, 23 S.E.2d 124, 126–27 (Va. 1942); *see also Nehi Bottling Co. v. Lambert*, 86 S.E.2d 156, 161 (Va. 1955) (finding contributory negligence when a plaintiff "either failed to look when looking would have been effective, or he failed to heed when he saw or should have seen."); *Von Roy v. Whitescarver*, 89

S.E.2d 346, 348–49, 352 (Va. 1955) (finding defendant negligent for accident caused after he turned left into oncoming traffic, though he claimed to have looked and not seen the oncoming car, because "[a] driver of a motor vehicle is under the absolute duty to see an oncoming vehicle which is in such plain view that looking with reasonable care he is bound to have seen it.").

Likewise, Plaintiff has established that Defendant had a duty to provide the right medication to the right patient. In providing medication labeled and intended for another patient to Walker Franklin, Defendant breached that duty. Defendant does not allege that its employee, Jaudon, properly looked for identifying information on the prescription. But even if it did so allege, K-Mart cannot be heard to say that Jaudon looked and did not see what she was bound to have seen if she had looked – that the prescription was labeled for *William* Franklin, *not* Walker Franklin. Neither has Defendant pointed out any material fact suggesting contributory negligence or intervening factors that would place its breach in genuine dispute.

On these undisputed facts, I find that under Virginia law, Plaintiff has established Defendant breached the applicable standard of care in dispensing Mr. Franklin the wrong prescription. *See cf. French Drug Co., Inc. v. Jones*, 367 So. 2d 431, 433 (Miss. 1978) (holding factual showing that pharmacist dispensed the wrong drug establishes breach of duty); *Edelstein v. Cook*, 140 N.E. 765, 766 (Ohio 1923) (same); *Higgins v. Thrifty Payless, Inc.*, No. B141142, 2002 WL 57403, at *3 n.5 (Cal. Ct. App. Jan. 16, 2002) (explaining absence of cases dealing with breach of a pharmacist's duty in dispensing wrong medication as perhaps due to "the obvious nature of the proposition, leading at least some parties to concede the issue of breach of duty . . . and confine the dispute to causation and damages.").

## IV. Conclusion

For the reasons stated above, I will GRANT Plaintiff's Motion for Partial Summary Judgment (docket no. 24). Plaintiff has established that the applicable standard of care required Defendant's pharmacy, through its employees, to ensure that the correct medication was given to the correct patient. In admittedly failing to do so by providing Walker Franklin with medication labeled and intended for another patient, Defendant breached the standard of care applicable to its pharmacy. The issues of the applicable standard of care and breach of that standard are therefore established in Plaintiff's favor, and the parties need only address causation and damages as this case proceeds forward.

It is so ORDERED.

Entered this __4th__ day of February, 2014.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE